CAITLIN ROBIN & ASSOCIATES, PLLC
Caitlin Robin
30 Broad Street, Suite 702
New York, New York 10004
Tel: (646) 524-6026
Attorneys for Plaintiff
LUCYNA CZERNY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

LUCYNA CZERNY

       Plaintiff,

       Civil Action No:

       v.

       **COMPLAINT AND JURY DEMAND**

M&T BANK, HUDSON CITY SAVINGS BANK

       Defendant.

---

Plaintiff, Lucyna Czerny, by and through their undersigned counsel, complaining of the defendant, alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 in that this case involves a federal question under Title VII of the Civil Rights Act, 42 U.S.C.A. 2000e *et seq,* the Family Medical Leave Act of 1993, 29 U.S. CODE § 2601, the Fair Labor Standards Act of 1938, 29 U.S. CODE § 201, and has supplemental jurisdiction under 28 U.S.C. §1367 in that all other claims of plaintiff form part of the same claim and controversy.

2. Venue is proper because the events giving rise to Plaintiff's claims occurred in this district.

3.  Plaintiff's claims against Defendants M&T Bank and Hudson City Savings Bank sound in discrimination and retaliation based on national origin and wrongful termination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C.A. 2000e *et seq.*; the Family Medical Leave Act of 1993, 29 U.S. CODE § 2601 ("FMLA"); the Fair Labor Standards Act of 1938, 29 U.S. CODE § 201 ("FLSA"); the New Jersey Law against Discrimination (N.J.S.A. 10:5-12), the New Jersey Family Leave Act, and violation of the New Jersey Wage & Hour Law and the New Jersey Wage Payment Law.

## PROCEDURAL BACKGROUND

4.  In or around December  7 2018, Plaintiff filed a Charge against defendant M & T Bank, Inc. with the U.S. Equal Employment Opportunity Commission ("EEOC") for violations under Title VII. She was assigned EEOC Charge No. 520-2019-01114.

5.  On or about February 16, 2021, the EEOC issued a "Notice of Right to Sue" to Plaintiff advising her of her right to file a civil action against defendant M &T Bank within 90 days of her receipt of the notice.

6.  This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

7.  Any and all other prerequisites to the filing of this suit have been met

## PARTIES

8.  Plaintiff is a 66-year-old woman of polish descent, who resides at 384 Schraalenburgh Road Haworth, NJ 07641, was an employee of Defendant M & T Bank, Inc., within the meaning of Title VII of the Civil Rights Act, 42 U.S.C.A. 2000e *et seq,* and the N.J Law Against Discrimination, <u>N.J.S.A</u> 10:5-1 *et seq*.

9. At all relevant times, Plaintiff met the definitions of an "employee" under all applicable statutes.

10. Hudson City Savings Bank ("Hudson City") is a financial institution that provides, *inter alia*, private banking, small business loans administration and numerous credit and finance related services to its individual and business customers.

11. Hudson City Savings Bank ("Hudson City") is located at 8 Union Avenue, Cresskill, NJ 07626. Hudson City was Plaintiff's employer at all relevant times to this action, specifically, from January 15, 2013 through February 14, 2016, when Hudson City merged with M&T Bank ("M&T") located at 632 Westwood Avenue, River Vale, NJ 07675. From February 14, 2016, through the date of Plaintiff's termination on March 13, 2018, she was employed by M&T.

12. Both Hudson City and M&T were employers of Plaintiff at all relevant times to this action, including jointly and severally.

13. At all relevant times, both Hudson City and M&T met the definition of an "employer" under all applicable statutes and employs in excess of 15 employees.

## STATEMENT OF FACTS

14. At all times relevant to this action, Plaintiff worked as a teller at both Hudson City and M&T (hereinafter collectively referred to as the "Bank").

15. She was trained to perform her duties by her supervisors at the Bank, and she exclusively utilized the Bank's facilities and resources in the performance of her daily duties.

16. The Bank maintained records of the hours Plaintiff worked and her work was directly controlled and supervised by the Bank's employees on a daily basis.

17. During the course of her employment at the Bank and while performing her assigned duties and responsibilities, Plaintiff was forced to endure a work environment permeated with offensive, belittling, insulting and demeaning comments targeting her national origin, in violation of federal

and state anti-discrimination law, which altered her working conditions as well as her emotional and mental state for extended periods of time.

18. Plaintiff was also subject to unlawful retaliation by virtue of engaging in protected activity while employed at the Bank and in retaliation to her statutorily permitted use of statutorily protected leave to care for her ailing mother.

19. During the course of her employment at the Bank, Plaintiff was supervised by and worked with the following individuals: Nancy Roth, Floating Teller; Elisa Quinche, Manager Caldwell Branch; Marian Metri, Relation Banker; Randi Offner; and, Barbara Muro, Relationship Banker, all of whom played a role in the discriminatory actions Plaintiff was subjected to.

20. Plaintiff started working for the Bank on or about January 13, 2015 as a teller. During her five years of employment at the Bank, she received stellar reviews and was an exemplary employee. She was punctual, professional and continually exceeded goals and expectations.

21. As a matter of fact, because of her evident competency and willingness to learn as well as assist, she was often assigned tasks and responsibilities that were typically reserved for head tellers and other employees in supervisory capacities.

22. In light of her excellent performance, Plaintiff received a 16% salary increase from $24,000 to $28,000 in February 2018. Defendant is in possession of any/all documents relative to Plaintiff's compensation.

23. Notwithstanding Plaintiff's positive performance at the Bank, she was repeatedly subjected to an onslaught of offensive comments about her national origin by her supervisors and coworkers. On or about October, 2017, Nancy Roth, a float teller at the Bank began incessantly mocking Plaintiff's accent and pronunciation of words.

24. The instances in which Plaintiff's accent and pronunciation of words were ridiculed took place almost on a weekly basis, often times, more than once or twice a week – for months and years.

25. Ms. Roth continued to make offensive, demeaning and jeering comments geared specifically to Plaintiff's national origin, and blatantly to referenced Plaintiff's national origin and country of birth – Poland, on more than one occasion, by telling her to "go back to Poland."

26. These comments were neither made in isolated instances, nor were they harmless and neutral; as a matter of fact, they were frequent and continuous, and evinced the fact that Ms. Roth harbored discriminatory animus towards Plaintiff based on her national origin, and were inherently and dangerously discriminating.

27. Additionally, these comments played a role in the Bank's decision to ultimately terminate her employment because of the discriminatory animus harbored towards her.

28. Plaintiff, horrified by Ms. Roth's comments, and in compliance with the Bank's policy of reporting complaints of discrimination and harassment to upper management, reported Ms. Roth's harassing behavior to Elisa Quinche, the Oradell branch manager, who Plaintiff believed was the acting manager.

29. Plaintiff reached out to Ms. Quinche because there was no branch manager assigned to the River Vale location, thus, there was no one in that location to whom she could report the harassment. Also, because there was no branch manager assigned to the River Vale location, Plaintiff was both unsure of who she should be reporting the harassment to, and forced to endure the continuous onslaught of offensive comments.

30. Thus, the Bank failed to have a clear, straight forward process/system of addressing complaints of discrimination by its employers, eventually leading to their inadvertent ratification and

condonation of such comments by their failure maintain any such processes, as well as act on any complaints by Plaintiff and/or other employees.

31. Plaintiff makes this assertion because, to her knowledge, no action was taken in response to the complaints she made against Ms. Roth.

32. Another notable incident occurred on or about February 28, 2018, during which Plaintiff was causally conversing with her coworkers about an incident which took place in her neighborhood the night before, where multiple police officers parked in front of her house to pull over a vehicle. She expressed her opinion to her coworkers that it shouldn't take so many police officers to simply pull over one vehicle for a routine traffic stop. Ms. Roth angrily retorted, "If you don't like this country, go back to your own country. Go back to Poland."

33. Ms. Roth's comments had nothing to do with her personal belief about use of police time and resources. Rather, it was simply another attempt to harass and express her discriminatory animus against Plaintiff. Plaintiff, though visibly upset at Ms. Roth for the comments she made, quietly returned to her assigned station and continued working for the rest of the day.

34. Several hours after the incident, Ms. Quinche came to the River Vale branch and asked to speak with Plaintiff regarding the incident that had transpired earlier. Plaintiff told Ms. Quinche what happened earlier and again expressed that she found the comments made by Ms. Roth to be offensive and discriminatory. Ms. Quinche then asked, Plaintiff to write an email statement of the incident, and assured her that the Bank will follow up as needed.

35. Plaintiff wrote an email statement about the incident and sent it to Ms. Quinche as per her instructions.

36. Again, to Plaintiff's knowledge, no action was taken in response to the complaints she made against Ms. Roth and Plaintiff continued to be subject to offensive and discriminatory comments about her national origin for the remainder of the employment at the Bank.

37. Ms. Roth continued to make disparaging comments to Plaintiff about her country of birth at any opportunity she had, even when the conversations, as evinced above, had nothing to do with Plaintiff's national origin.

38. This kind of behavior is what Title VII and NJ anti-discrimination law was designed to prevent and punish.

39. In addition to being forced to endure a work environment permeated with offensive, belittling, insulting and demeaning comments targeting her national origin, Plaintiff was also subject to illegal wage practices by the Bank, in violation of the FLSA and New Jersey Wage Laws.

40. Specifically, Plaintiff was forced to clock in less hours than those she actually worked, which she believes was done to ensure that she is never compensated at the overtime wage rate for hours worked in excess of forty hours each week.

41. Plaintiff routinely worked in excess of 40 hours a week but was not compensated for her time.

42. By way of example, in one instance, Plaintiff was asked to change her hours logged from 37.7 hours to 37.5 hours. Plaintiff was also forced to work a full day without paid breaks, in violation of New Jersey wage laws.

43. Defendants are in possession of all documents relative to Plaintiff's wage claims and must provide them during discovery.

44. The Bank also routinely failed to pay Plaintiff for commissions earned by virtue of referrals she made to the Bank. Upon information and belief, other employees regularly received their commission but when it came to Plaintiff's turn to receive payments, she was often told that

management's alleged failure to approve the referrals in a timely manner prevented her from getting her otherwise earned commission.

45. In early 2018, Plaintiff notified the Bank that her mother was gravely ill in Poland, and requested time to go visit her. As per the Bank's protocol, Plaintiff sought and obtained permission from Barbara Muro, a senior relationship banker, to go take care of her ailing mother.

46. Plaintiff then travelled to Poland on or about March 1, 2018.

47. Plaintiff's employment at the Bank was abruptly terminated on or about March 13, 2018 upon her return from Poland. She was asked to meet with Ms. Quinche and a manager who had started working at the branch while she was in Poland. Ms. Quinche handed her a letter of termination which stated, in the most vague and conclusory manner, that she was being terminated for violating the Bank's Employee Conduct Policy, without referring to any specific policy.

48. Further, the reason provided to Plaintiff about for her termination was purely pretextual, as her attention was never brought to the specific policy she violated, and in contravention of the theory of progressive discipline, which mandates gradual corrective action for occurrences of violation of company policy.

49. Ultimately, the Bank took an adverse employment action and retaliated against Plaintiff by wrongfully terminating her employment. Moreover, it is our position that the Bank did not follow proper protocol when it terminated Plaintiff.

50. Plaintiff was discriminated against by virtue of her national origin, as well as retaliated against because she used her federally protected leave. The assertion that she was wrongfully terminated because of her national origin, is supported by the discriminatory animus apparent in the Bank's high level employees' comments to her, and general treatment of her.

51. Further, the Bank's decision to terminate her upon return from protected leave to care for her ailing mother   is the sort of cruel treatment that various anti-discrimination statutes were enacted to prevent.

52. In the course of performing the duties of her position, the Bank discriminated against Plaintiff in violation of the Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a work environment that included, among other things, continued and extreme harassment of Plaintiff because of her national origin.

53. These actions amounted to more than just a series of innocent jests, and or petty/benign slights and trivial inconveniences in the workplace. They were continuous, severe and pervasive, and had a lasting effect on Plaintiff's emotional and mental well-being

54. The acts of discrimination forming the basis of this complaint began in 2013, and continued through March 2018.

55. Plaintiff was wrongfully terminated given that she had an outstanding performance record in her role at the Bank. As such, the Bank engaged in discriminatory conduct by refusing to conduct a thorough investigation of her complaints of discrimination and thereby condoning and ratifying the complained-about discriminatory actions, and then retaliated against her by terminating her employment shortly after she engaged in protected activity by complaining about discrimination based on her national origin, and providing a written statement regarding same.

56. The Bank also interfered with Plaintiff's rights under the FMLA and New Jersey Family Leave Act by unlawfully deciding to punish/retaliate against her by terminating her employment while she was on statutorily protected leave.

57. Plaintiff was also subject to illegal wage practices and was denied her earned commission because of her national origin in violation of applicable local, state and federal laws.

## COUNT ONE

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 , 42 U.S.C. 2000e-3(a)

58. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

59. At all relevant times herein Defendants are and continue to be "employers" under Title VII of the Civil Rights Act.

60. At all relevant times herein Plaintiff was an employee of Defendants under Title VII of the Civil Rights Act.

61. Title VII of the Civil Rights Act prohibits employers from discriminating against employees based on their national origin.

62. Plaintiff was born in Poland, and is of polish descent, and the Defendants subjected her to harsh, demeaning, embarrassing and discriminatory working conditions because of her national origin.

63. Defendants' actions constituted discrimination under the Title VII of the Civil Rights Act.

64. Defendants through its agents engaged in a pattern and practice of discrimination against her during her employment on the basis of her national origin with respect to the terms, conditions and privileges of her employment in violation of Title VII.

65. As part of its pattern and practice of employment discrimination, Defendants through their agents subjected Plaintiff to national origin discrimination and failed to take corrective action.

66. Defendants knew or should have known about the national origin discrimination in the workplace.

67. Defendants failed and refused to take appropriate action to end the national origin discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

68. This disparate treatment was motivated by the fact that Plaintiff's national origin.

69. For the reasons set forth in this Complaint, Defendants' actions violated Title VII of the Civil Rights Act of 1964.

70. Defendants' actions were motivated by malice and reckless disregard for Plaintiff's rights under the law.

71. That as a result of the discriminatory acts of Defendants through their agents, Plaintiff suffered emotional distress.

72. Defendants discrimination against Plaintiff was committed with reckless and callous disregard of her Title VII right to a workplace free from discrimination based on her national origin.

73. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT TWO
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF N.J LAW AGAINST DISCRIMINATION, N.J.S.A 10:5-1 *ET SEQ*

74. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

75. At all relevant times herein Defendants are and continue to be "employers" under NJ Law Against Discrimination.

76. At all relevant times herein Plaintiff was an employee of Defendants under NJ Law Against Discrimination.

77. NJ Law Against Discrimination prohibits employers from discriminating against employees based on their national origin.

78. Plaintiff was born in Poland, and is of polish descent, and the Defendants subjected her to harsh, demeaning, embarrassing and discriminatory working conditions because of her national origin.

79. Defendants' actions constitute discrimination under New Jersey Law Against Discrimination.

80. Defendants through its agents engaged in a pattern and practice of discrimination against her during her employment on the basis of her national origin with respect to the terms, conditions and privileges of her employment in violation of New Jersey Law Against Discrimination.

81. As part of its pattern and practice of employment discrimination, Defendants through their agents subjected Plaintiff to national origin discrimination and failed to take corrective action.

82. Defendants knew or should have known about the national origin discrimination in the workplace.

83. Defendants failed and refused to take appropriate action to end the national origin discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

84. This disparate treatment was motivated by the fact that Plaintiff's national origin.

85. For the reasons set forth in this Complaint, Defendants' actions violated the New Jersey Law Against Discrimination.

86. Defendants' actions were motivated by malice and reckless disregard for Plaintiff's rights under the law.

87. That as a result of the discriminatory acts of Defendants through their agents, Plaintiff suffered emotional distress.

88. Defendants discrimination against Plaintiff was committed with reckless and callous disregard of her right to a workplace free from discrimination based on her national origin under the New Jersey Law Against Discrimination.

89. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT THREE

### HOSTILE WORK ENVIORNMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 , 42 U.S.C. 2000e-3(a)

90. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

91. At all relevant times herein Defendants are and continue to be "employers" under Title VII of the Civil Rights Act.

92. At all relevant times herein Plaintiff was an employee of Defendants under Title VII of the Civil Rights Act.

93. Title VII of the Civil Rights Act prohibits employers from maintaining a hostile work environment ridden with severe and pervasive conduct.

94. Defendants' actions constitute a hostile work environment.

95. Plaintiff alleges that Defendants through its agents and employees created and condoned a hostile work environment against Plaintiff by continuously humiliating and embarrassing her and making hostile and threatening comments towards her because of her national origin.

96. In violation of Title VII, Defendant discriminated against Plaintiff on the basis of National Origin by subjecting her to a hostile work environment that was severe and pervasive enough to affect the terms and conditions of her employment.

97. That as a result of the discriminatory acts of Defendant through its agents and employees, Plaintiff suffered severe emotional distress.

98. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT FOUR
## HOSTILE WORK ENVIORNMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION , N.J.S.A 10:5-1 *ET SEQ*

99. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

100.    At all relevant times herein Defendants are and continue to be "employers" under the New Jersey Law Against Discrimination.

101.    At all relevant times herein Plaintiff was an employee of Defendants under the New Jersey Law Against Discrimination.

102.    The New Jersey Law Against Discrimination prohibits employers from discriminating against employees based on their national origin.

103.    Defendants through its agents and employees created and condoned a hostile work environment against Plaintiff by continuously humiliating and embarrassing her and making hostile and threatening comments towards her because of her national origin.

104.    Defendant's actions constitutes discrimination under the New Jersey Law Against Discrimination.

105.    In violation of the New Jersey Law Against Discrimination, Defendant discriminated against Plaintiff on the basis of National Origin by subjecting her to a hostile work environment that was severe and pervasive enough to affect the terms and conditions of her employment.

106.    That as a result of the discriminatory acts of Defendant through its agents and employees, Plaintiff suffered severe emotional distress.

107.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT FIVE

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT 29 U.S. CODE § 2601 (INTERFERENCE)

108.     Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

109.     Plaintiff was an eligible employee under the definitional terms of the Family Medical Leave Act of 1993 ("FMLA").

110.     As of March 2018, Plaintiff was employed by Defendants for at least twelve (12) months.

111.     Further Plaintiff had at least 1,250 work hours at Defendants in the months prior to the commencement of her FMLA protected leave.

112.     Defendants are employers engaged in an industry of commerce and employed more than 50 (fifty) employees for 20 (twenty) or more calendar work weeks in 2018, or in the proceeding calendar year.

113.     Plaintiff was entitled to up to 12 (twelve) weeks leave to take care of her ailing mother.

114.     Plaintiff requested time off work in March 2018 in order to take care of her ailing mother.

115.     Defendants interfered with Plaintiff's FMLA rights by failing to inform her of any/all necessary documentation, processes and/or information which Defendants required Plaintiff to complete, which formed the basis of Plaintiff's termination.

116.     Notwithstanding the fact that Plaintiff was wrongfully and discriminatorily terminated, but for Defendants' failure to provide the requisite information to Plaintiff relative to her FMLA rights, Plaintiff would have not been terminated from Defendants.

117.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT SIX
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT 29 U.S. CODE § 2601
## (RETALIATION)

118.     Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

119.     Plaintiff was an eligible employee under the definitional terms of the Family Medical Leave Act of 1993 ("FMLA").

120.     As of March 2018, Plaintiff was employed by Defendants for at least twelve (12) months.

121.     Further Plaintiff had at least 1, 250 work hours at Defendants in the months prior to the commencement of her FMLA protected leave.

122.      Defendants are employers engaged in an industry of commerce and employed more than 50 (fifty) employees for 20 (twenty) or more calendar work weeks in 2018, or in the proceeding calendar year.

123.     Plaintiff was entitled to up to 12 (twelve) weeks leave to take care of her ailing mother.

124.     Plaintiff requested time off work in March 2018 in order to take care of her ailing mother.

125.     Defendants retaliated against Plaintiff by terminating her employment upon return from her FMLA leave, because she took her federally protected leave.

126.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT SEVEN
## VIOLATION OF THE NEW JERSEY FAMILY LEAVE ACT, N.J.S.A. 34:11B-9(A), "NJFLA" (INTERFERENCE)

127.     Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

128.     Plaintiff was an eligible employee under the definitional terms of the New Jersey Family Leave Act ("NJFLA").

129.     As of March 2018, Plaintiff was employed by Defendants for at least twelve (12) months.

130.     Further Plaintiff had at least 1,000 work hours at Defendants in the months prior to the commencement of her NJFLA protected leave.

131.      Defendants are employers engaged in an industry of commerce and employed more than 50 (fifty) employees for 20 (twenty) or more calendar work weeks in 2018, or in the proceeding calendar year.

132.     Plaintiff was entitled to up to 12 (twelve) weeks leave to take care of her ailing mother.

133.     Plaintiff requested time off work in March 2018 in order to take care of her ailing mother.

134.     Defendants interfered with Plaintiff's NJFLA rights by failing to inform her of any/all necessary documentation, processes and/or information which Defendants required Plaintiff to complete, which formed the basis of Plaintiff's termination.

135.     Notwithstanding the fact that Plaintiff was wrongfully and discriminatorily terminated, but for Defendants' failure to provide the requisite information to Plaintiff relative to her NJFLA rights, Plaintiff would have not been terminated from Defendants.

136.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT EIGHT
## VIOLATION OF THE NEW JERSEY FAMILY LEAVE ACT, N.J.S.A. 34:11B-9(A), "NJFLA" (RETALIATION)

137.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

138.    Plaintiff was an eligible employee under the definitional terms of the New Jersey Family Leave Act ("NJFLA").

139.    As of March 2018, Plaintiff was employed by Defendants for at least twelve (12) months.

140.    Further Plaintiff had at least 1,000 work hours at Defendants in the months prior to the commencement of her NJFLA protected leave.

141.    Defendants are employers engaged in an industry of commerce and employed more than 50 (fifty) employees for 20 (twenty) or more calendar work weeks in 2018, or in the proceeding calendar year.

142.    Plaintiff was entitled to up to 12 (twelve) weeks leave to take care of her ailing mother.

143.    Plaintiff requested time off work in March 2018 in order to take care of her ailing mother.

144.    Defendants retaliated against Plaintiff by terminating her employment upon return from her NJFLA leave.

145.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT NINE

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e-3(a)

146.    Plaintiff repeats and incorporate by reference the allegations stated above as if they were set forth in full herein.

147.    Defendants engaged in unlawful employment practices in violation of Section 704(a) of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-3(a), when they terminated Plaintiff's employment, in retaliation shortly after she complained about discriminatory comments made towards her by other employees on the basis of her national origin.

148.    Plaintiff alleges that Defendants through its agents engaged in retaliation against Plaintiff as a result of Plaintiff's actions of participating in the complaint process and protected activity, as protected by Title VII.

149.    The practices complained of above have deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, because of her national origin.

150.    The unlawful employment practices complained of above were intentional.

151.    The unlawful employment practices complained of above were, and are, done with malice or with reckless indifference to the federally protected rights of Plaintiff.

152.    That as a result of the discriminatory acts of Defendants through their agents, Plaintiff suffered emotional distress.

## COUNT TEN
## RETALIATION IN VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION , N.J.S.A 10:5-1 *ET SEQ*

153.    Plaintiff repeats and incorporate by reference the allegations stated above as if they were set forth in full herein.

154.    Defendants engaged in unlawful employment practices in violation of New Jersey Law Against Discrimination when they terminated Plaintiff's employment, in retaliation shortly after she complained about discriminatory comments made towards her by other employees on the basis of her national origin.

155.     Plaintiff alleges that Defendants through its agents engaged in retaliation against Plaintiff as a result of Plaintiff's actions of participating in the complaint process and protected activity, as protected by the New Jersey Law Against Discrimination.

156.     The practices complained of above have deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, because of her national origin.

157.     The unlawful employment practices complained of above were intentional.

158.     The unlawful employment practices complained of above were, and are, done with malice or with reckless indifference to the federally protected rights of Plaintiff.

159.     That as a result of the discriminatory acts of Defendants through their agents, Plaintiff suffered emotional distress.

## COUNT ELEVEN
## FAILURE TO PAY OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT (FLSA)

160.     Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

161.     At all times relevant to this action, Plaintiff was employed by Defendants, individually and/or jointly, within the meaning of the FLSA and the regulations thereunder.

162.     At all times relevant to this action, Plaintiff was classified as an hourly employee under the FLSA Law, and was paid as an hourly employee.

163.     At all times relevant to this action, Plaintiff worked over 40 hours a week, on many weeks, subjecting her to the overtime provisions of the FLSA.

164.     Defendants are in possession of any/all time sheets and or relevant data relative to the hours worked by plaintiff, pursuant to Defendant's record keeping requirements under New Jersey law.

165.      At all times relevant herein, Defendants, failed to pay and willfully failed to pay plaintiff

overtime compensation at rates not less than 1.5 times her regular rate of pay for each and all hours

worked in excess of forty (40) hours in a workweek, in violation of the FLSA.

166.      In the same light, plaintiff was forced to clock in less hours than those she actually worked,

to ensure that she is never compensated at the overtime wage rate for hours worked in excess of

forty hours each week, in violation of the FLSA.

167.      Plaintiff is entitled to recover from Defendants, her unpaid overtime wages, maximum

liquidated damages, prejudgment interest, attorney's fees, and costs of the action, pursuant to

FLSA.

### COUNT TWELVE

### FAILURE TO PAY OVERTIME WAGES UNDER THE NEW JERSEY WAGE & HOUR LAW (NJWHL) AND THE NEW JERSEY WAGE PAYMENT LAW (NJWPL) (collectively "NJ Wage Laws) N.J.S.A. 34:11-4.*1 ET SEQ*

168.      Plaintiff repeats and incorporates by reference the allegations stated above as if they were

set forth in full herein.

169.      At all times relevant to this action, Plaintiff was employed by Defendants, individually

and/or jointly, within the meaning of NJ Wage Laws and the regulations thereunder.

170.      At all times relevant to this action, plaintiff was classified as an hourly employee under the

FLSA Law, and was paid as an hourly employee.

171.      At all times relevant to this action, plaintiff worked over 40 hours a week, on many weeks,

subjecting her to the overtime provisions of the NJ Wage Laws.

172.      Defendants are in possession of any/all time sheets and or relevant data relative to the hours

worked by plaintiff, pursuant to Defendants' record keeping requirements under NJ Wage Laws.

173.   At all times relevant herein, defendants, failed to pay and willfully failed to pay Plaintiff overtime compensation at rates not less than 1.5 times her regular rate of pay for each and all hours worked in excess of forty (40) hours in a workweek, in violation of the NJ Wage Laws

174.   In the same light, plaintiff was forced to clock in less hours than those she actually worked, to ensure that she is never compensated at the overtime wage rate for hours worked in excess of forty hours each week, in violation of the NJ Wage Laws

175.   Plaintiff is entitled to recover from Defendants, her unpaid overtime wages, maximum liquidated damages, prejudgment interest, attorney's fees, and costs of the action, pursuant to NJ Wage Laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays and respectfully requests that the Court enter judgment in her favor and against Defendants, containing the following:

a.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New Jersey.

b.   Order Defendants to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices;

c.   Order Defendants to make whole Plaintiff, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, overtime wages, lost bonuses, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

d.   Order Defendants to make whole Plaintiff, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

e.  Order Defendants to make whole Plaintiff, by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, embarrassment, and isolation, resulting from the unlawful employment practices described above, in amounts to be determined at trial;

f.  Order Defendants to pay Plaintiff, punitive damages for its malicious and reckless conduct described above;

g.  Awarding Plaintiff reasonable costs and disbursement of this action, including her reasonable attorneys' fees; and

h.  Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## CERTIFICATION

The undersigned counsel hereby certifies that she has no knowledge of the matter in controversy being the subject of any other pending or contemplated judicial or arbitration proceeding, which may affect the parties or matters described herein.

## TRIAL COUNSEL

Pursuant to Rule 4:25-4, Caitlin Robin of the law firm of Caitlin Robin & Associates PLLC is hereby designated as trial counsel.

Dated: February 23, 2021
  New York, New York

         _____
         CAITLIN ROBIN
         CAITLIN ROBIN & ASSOCIATES, PLLC
         Attorneys for PLAINTIFF
         LUCYNA CZERNY
         30 Broad Street, Suite 702
         New York, New York 10004
         Tel: (646) 524-6026